[JUDGE ROANE
then suggested to the Court the propriety of reconsidering the *662 point of the quod cum. He observed, that although the decisions of this Court were in strict conformity with the British authorities, yet, this being a point of practice, and not a rule of property; and there having been, probably, a general misapprehension among the gentlemen of the bar, on this subject, it might be worthy of consideration, whether, in order to prevent mischief, the Courts, in this country, might not deviate from the English practice.]
The Court having consented to reconsider the point, it was argued by Call, for the appellant, and by Warden, for the appellee. But as the Court adjourned without coming *to any decision, and the judgments in the case of Hord’s Executrix v. Dishman, and Moore’s Administrator v. Dawney, &c. rendered at the same term, were not set aside, it might fairly be presumed that the judges were not disposed to change the rule, (a)
Call (as to the quod cum in the declaration) argued, that, according to the letter and spirit of our laws, which do not agree entirely with the British statutes on this subject, matters of form ought to be disregarded; that, as this question did not respect a rule of property, but a mere point of practice, it was but reasonable that we should conform to the spirit of our own laws, especially when we are about to make an interpretation on them, and the English Judges have declared that they would not extend the objection farther than it had been already carried. Our statutes have long provided, ‘ ‘that in all personal actions, where the declaration shall plainly set forth sufficient matter of substance for the Court to proceed upon the merits of the cause, the suit shall not abate for want of form.” (b) Torture this question as you will, still it is but a mere matter of form. It is impossible to suppose, but that the defendant knew as well what charge he was to answer, as if there had been a positive averment. Again; our statute of jeofails(c) declares that judgment after verdict, shall not be stayed or arrested for “omitting the averment of any matter, without proving which, the Jury ought not to have given such a verdict.” In this case, it is impossible that the Jury could have found for the plaintiff, unless they had been satisfied that the defendant really was concerned in the prosecution of the cause, though he had apparently withdrawn from it. The case seems to fall within the reason of the principle which makes a difference between a defective title, and a title defectively set forth.
In the case of Dobbs v. Edmunds, (d) the Court declared, that “they would be bound by what had been already determined; but they should be very cautious of extending this exception after verdict further than it had been carried *before.” In the Common Pleas, in order to get rid of the objection, the Court will seize hold of the trifling circumstance that, according to the mode of declaring in that Court, the writ is recited in the commencement of the declaration ; and therefore it is held that what follows, makes the averment positive. But it is really difficult to perceive the distinction. Two thirds of the declarations in this State, will probably be found to contain this unfortunate quod cum; and great mischief will ensue from an adherence to the decisions of the Court of King’s Bench on this point. If the question had been asked the Legislature of Virginia, whether, when they passed the beneficial statute of jeofails, which was intended to protect verdicts against technical quibbles, they had an idea that such an objection as this could afterwards have been sustained, one and all would have said no.
But, however correct the objection may be in trespass, it is not so in case as this action is; and the Court will not carry the exception farther than it has been in England, but confine it to trespass only. Compare this with a common declaration in in-debitatus assumpsit. You will find it is as all recital there till you come to the breach ; when it is merely said, that the defendant refused to pay, &c. The cause of action is much stated by way of recital, as in this case. There is a precedent, too, in 1 Modern Entries, 217, 218, and in 1 Lilly’s Entries, 38, where the case is set out with a “whereas,” and concludes exactly like this.
It is true that there are recent decisions of this Court against me; but it never had been contended that a single decision shall invariably fix the rule. In Jolliffe v. Hite, (e) Judge Pendleton says, “Uniformity in the decisions of this Court is important. We have, however, progressed but little from the commencement of our existence; and if, in any instance, we should recently discover a mistake in a former decision, we should surely correct it, and not let the error go forth to our citizens as a governing rule of their conduct.” The first case in which this question occurred, was Ballard v. Leavell;(f) and, on the of the quod cum, the Court was equally divided. At the last term, the subject was reargued in Taylor v. Rainbow, (g) but the cause was decided on the form of the action. During the present term, in Hord’s Executrix v. Dishman, (h) and Moore’s Administrator v. Dawney, &c. (i) it has for the first time been unanimously decided that the quod cum is fatal.
Another reason why this exception should be disregarded, is, that in this country the writ is filed among the papers, and may be inspected by the Court, in the same manner as in the Common Pleas in England, where the quod cum is not held to be fatal. But in the Court of King’s Bench, the writ is not filed. It emanates from a different Court; and if oyer be demanded, the plaintiff applies to the Court of Chancery, and srets a writ to suit his case, (k) Sometimes the Court of King’s Bench will *663 award a certiorari, to bring up the writ, for the information of the Court, when no diminution is suggested, as was done in the case last cited; and this Court may do it for the same purpose. All these cases prove, that where the writ emanates from the same Court, it is considered a part of the record; and, by looking at the indorsement, there will be found a positive affirmation.
Warden, on the other side, referred to the several British statutes of jeofails, and contended that they went further in the protection of verdicts than our’s; still the quod cum was held to be fatal. This was a good exception at common law, and might have been provided against by the Legislature ; but, that not having been done, the Court must decide according to law. There is no averment in this declaration that the defendant had done any thing; it is mere recital from one end to the other. In case for slander, &c. the form commences with “whereas,” as inducement to the action, and concludes with “yet” &c. stating positively what the defendant did. Would the “whereas” in such an action be good, without the conclusion? Surely not.
*It is said, however, by Mr. Call, that this precedent is like the common one in indebitatus assumpsit. Not a declaration can be found in assumpsit, drawn by the most ignorant pleader, where the quod cum goes entirely through. After reciting the cause of action, they always conclude with a breach of promise, 1 ‘yet the defendant,” &c. without which, it would be clearly bad.
The law, on this point, has been fully settled. A number of cases exist both in England and in this Court, where the exception has been sustained; and if the Court were to decide other-wise now, instead of studying uniformity, they would study diversity. Ballard v. Leavell, Taylor v. Rainbow, Hord v. Dishman, and Moore v. Lawney, are all cases in point.
Wednesday, March 8th, 1809. The judgment of the District Court was unanimously affirmed. (1)

 See note (1) at the end of the case.

 Rev. Code, vol. 1, c. 67, s. 36. p. 89.

 Rev. Code, vol. 1, c. 76, s. 26, p. 112.

 2 Lord Raym. 1413.

 1 Call. 323.

 Nov. 1805, MS.

 2 Hen. & Munf. 423.

 Ibid. 595.

 Ante, p. 127.

 Andrews, 21, Smitli v. Reynolds; Ibid. 282, G-oodright v. Hodgson.; Cases temp. Hardw. 110, Franklyn v. Reeves.

 The Judgment of the Court below having- been given for the defendant, and this Court having merely affirmed it, without assigning- any reasons, doubts existed as to the grounds of the decision; whether upon the merits or the quod cum, or upon both. To remove those doubts, the Reporters addressed a note to the Judges, stating the difficulty which had occurred; that frequent applications had been made to them, by gentlemen of the bar, to know whether the point was still open to discussion: (an opinion which had been entertained, from the circumstance that the Court permitted it to be reargued, in this case, without coming to any direct decision on that very point;) and that it was important to the profession to receive the earliest information, how far the lav had been settled. The Judges very politely favoured the reporters with the following answers.
From Judge Fleming.
"In a conference with the Judges, on the point of quod cum, after the argument of Lomax v. Hord, 1 understood it to have been the unanimous opinion, as it was by my own, to adhere to former decisions of the Court, on the subject; it being better to compel the practitione rs to follow precedents, and conform to law, than that the law should bend to their loose practice.'" W. F.
From Judo® Tucker.
The reporters were verbally authorised by Judge Tucker, to say that he concurred in the above statement of Judge Fr,timing.
From Judge Roane.
“S. H. presents his repects to Messrs. Hening and Munford. In answer to their note respecting: the decision of the Court on the point of quod cum. he begs leave to say; — that the question first occurred in the Court of Appeals, to his knowledge, in the case of Ballard v. Leavell, which has never been reported. In that case, two of the Judges (of whom S. T£. was one) were of opinion, that the defect was substantial, and that it was not cured by a verdict: two other Judges thought otherwise. Since the accession of Judge Tucker to the Court, he has adopted the former opinion, and several decisions have been given conformably thereto, by the voices of the three present acting- Judgres. The groun ds o C the opinion of S. R. were stated, in the said case of Ballard v. Leavell. He has not since seen cause to chang-e that opinion: but understanding- that some dissatisfaction existed with a part of the bar, touching- this decision, and fearing-, from various information, that this error was very general, with the profession in this country, upon the occurrence of the point again, in the case of Lomax v. Hord, it seemed to him worthy of reconsideration, on this last ground only; and he mentioned his wish in Court, that it should be reconsidered. That request was acceded to. It was made by S. R. under the influence of a principle, stated by one of the Judges, (supposed to be Mr. Pendleton,) in the case of Boswell v. Jones, 1 Wash. 322, ‘that although uniform decisions which establish the rules of property, ought to be adhered to, yet that he (the Judge) did not view them as sacred in points of practice, which should vary, as experience should evince their convenience or inconvenience.’ In a conference after this with the other Judges, as they evinced no wish to retract their former opinions, as S. R. possessed no decisive evidence of the extent of this error, and as, in general, it is better to compel practitioners to conform to decisions, than that the law should bend to suit a loose practice, he readily acquiesced: especially as he had never doubted the correctness oi the opinion, in reference to adjudged cases.”
“Messrs. Hening and Munford, Richmond, May 16th 1809.”
Note by the Reporters.
ft has long been settled in England, that the quod cum in trespass is fatal. Gilbert, in his History and Practice of the Common Pleas, page 124. 125, says, “The declaration must contain such certain affirmation, as that it may be traversed; for, if there be no certain affirmation to make the declaration itself traversabie, it will not be cured after verdict, because it is a defect in the substance, if nothing be positively affirmed to be put in issue; and therefore, if a declaration be quod cum the defendant assaulted him, and the defendant pleads not guilty, there is nothing put in issue; for the pleadings have affirmed nothing; for, though the defendant be found guilty on that issue, yet the plaintiff cannot have judgment, because nothing is positively affirmed in the defendant by the allegata; but if the plaintiff declares quod cum the defendant con-cessit se teneri, or quod cum mutualus fuissei et non solvit, or cum dimisisset, and the defendant ejecit, in these cases there is a positive charge upon the defendant, and the quod cum being a branch of the whole period, and making one sentence with the latter part of it, it is a positive affirmation: therefore, being positive, it is equally traversable with the latter part; and therefore a man may plead non est factum, non mutuatus, non dimisil; because, though these came under the quod cum taken together with the rest of the sentence, being positive they make substantive issues of themselves.” Accordingly,in all the ancient and modern books of entries of any authority, we find the charge in trespass positively alleged, and never with a quod cum, or whereas. In the Common Pleas, indeed, the declaration commences by way of recital, that the defendant was attached to answer the plaintiff wherefore, &c. reciting the substance of the writ; but it afterwards goes on to affirm positively: (see a precedent in Plowden, 21. Colthirst v. Beiushin,) which is the reason why that Court gets over the objection arising from the quod cum. although it is held fatal in the King’s Bench; where the plaintiff declares Immediately against the defendant in the custody of the Marshal, &c. and does not recite the writ. See the Old Book of Entries, (Liber Intrationum,) edit. 1546. folio ccxix. where there is a declaration, “by bill against a person in custody of the Marshal,” for trespass, assault and battery, and wounding; setting forth, by way of aggravation of damages, that in consequence of the defendant's threats, and the plaintiff’s fear of his life, he was prevented from attending to his business, in buying and selling merchandise, &c. for a longspace of time, &c. This declaration commences with a positive averment, thus: “Lawrence Burgoyne complains of William *664 Ranse, being; in custody of the Marshal of the Mar- - shalsea of our lord the King-, before the King himself of this, that (de eo quod) he, on the twenty-ñf th day of August, in the eighth year of King Henry VIII. with force and arms, to wit, with swords, staves and knives, upon the said Lawrence, at Stellyng, in the County aforesaid, made an assault, and him beat, wounded, and ill-treated, so that his life was despaired of,” &c. The declaration then goes on to state the threats of the defendant, and the plaintiff’s loss of business, and concludes with alia enormia, and contra pacem, in the usual form. In the next folio of the same book, there is a declaration in case, upon the custom of England, for negligently keeping fire, whereby the plaintiff’s goods and chattels were burnt: which declaration commences with the same positive averment. In folio ccxviii. b. and many other parts of the same book, declarations in trespass by original, may be found; which commence with whereas, in reciting the substance of the writ, but afterwards charge the act positively. See also Eastall’s Entries 661, b. 675, b. 667, b. 669, b. 643, a. 633, a. &c. Coke’s Entries, 667, a. b. Robinson’s Entries, from 45S to 479. Han-sard’s Entries in the Court of King’s Bench, from 206 to 224, in all of which the choice is positively laid. Herne’s Pleader, 8C9; 2 Lilly’s Entries, 428, 431, 435, 437, 447, &c.; 1 Richardson’s Practice, K. B. 182, 383; 2 Richardson’s Practice, C. P. 244, 267; 1 Impey’s Practice, K, B. 153, 354; Morgan’s Precedents, 637, 644; 9 Wentworth’s System of Pleading, 1, 4, 45, 94, &c.
Some elementary writers in England, have said that quod cum in trespass was well enough after verdict, though possibly it might be bad on demurrer. See 5 Comyn’s Digest, by Rose, 766, tit. “Pleader.” (3 M. 3); 2 Morgan’s Vad. Mec. 233. In support of this position, the case of Douglas v. Hall, 1 Wils. 99, is cited: but on examining that case, it will be found,- that although the Court of King’s Bench, inclined to get over the objection, yet the point was never decided. Afterwards, in the case of White v. Shaw, 2 Wils. 203, in the Common Pleas, it was expressly adjudged on special demurrer, that the quod cum did not vitiate the declaration; but this was on the ground, that, in that Court, the writ is set out in the declaration, and the count is helped thereby; though perhaps, said the Court, if it had been a proceeding by bill in the King’s Bench, it might have been ill. To the same effect is Barne’s Notes, 452, Hall v. Douglas; Ibid. 249, Warren v. Lapdon; Barnardiston’s K. B. 423, Batiman v. Fowler; Andrews, 21, Smith v. Reynolds; Ibid. 282, Goodright v. Hodgson. But the Court of King’s Bench now get over the objection, after verdict, by suffering the plaintiff to file a right bill, (the time of filing which they refuse to inquire into,) and then amending the declaration by it. See 2 Stra. 1153, Wilder v. Handy; Ibid. 3162, Marshal v. Riggs; 1 Tidd’s Practice, (Riley’s edit.) 390.
The following cases turned upon objections to the declaration, for want of a positive averment. Cro. Eliz. 507, (B. R.) Briggs v. Sheriff, in trespass, assault and battery. Judgment of the Common Pleas reversed, on account of quod cum in the declaration. Style, 117, (B. R.) Butler v. Long. After verdict and judgment in trespass in a Corporation Court, error was brought, and the quod cum assigned for error. Per Rolle, J., quod cum in trespass is not good, though in another action it may. 2 Jones, 197, (B. R.) Cholmely v. Morton. Trespass for battery and false imprisonment: the plaintiff declared quod cum, &c.: the defendant justified by process of an inferior Court; and after other pleadings, there was a demurrer: but the Court without regarding the plea, and though it was a confession of the matter in the declaration, gave judgment that the plaintiff take nothing by his bill, for by the (cum) the declaration was defective in substance, nothing being precisely affirmed. 2 Bul-strode, 214, Sherland v. Heaton (B. R.) Trespass for assault and battery; on not guilty pleaded, there was a verdict for the plaintiff, and ‘a motion in arrest of judgment, because the declaration was with a quod cum. After two arguments the whole Court, except Coke, were of opinion that the declaration was bad, and determined that they would be governed by precedents, which were ordered to be searched for; and two were found by theSecondary directly in point that the quod cum was insufficient. On the first argument, Coke held that the declaration contained sufficient matter of substance; but however that might be, he thought it was aided by the statute 36 Edw. III. c. 15, which declares, that “by the ancient terms and forms of pleaders, no men shall-be prejudiced, so that the matter of the action be fully shewed in the declaration and the writ.” 2Levintzl93, Morsv. Thacker, (B. R.) Case for words: there were two counts in the declaration, the second of which was cumque etiam the defendant spoke certain other words, &c. After verdict and entire damages given, it was moved in arrest of judgment, that the last count was not affirmative. But. by the Court, this is well enough in an action on the case, as this is, though in trespass, ithas been ruled ill. Ibid. 206, Wettenhall v. Sherwin. Error of a judgment in battery, in Chester, that the declaration was by way of recital, quod cum, he was beaten, &c. upon which the judgment was arrested. Fitzgibbons, 255, (B. R.) Norman and George. Trespass, assault and battery, in the Common Pleas; verdict for the plaintiff, and error brought in the King’s Bench; and the error assigned was that the declaration contained no positive averment, being with a quod cum. It was argued on the point, whether the recital of the writ in the declaration could aid the count; the Court seemed to incline against the plaintiff; but no judgment was given.
It was, however, afterwards held, in White v. Shaw, 2 Wils. 203, that in the Common Pleas, where the writ was set out in the declaration, the count was helped by the writ; and judgment was given for the plaintiff. Salk. 636, (B. R.) Hore v. Chapman. In trespass, the plaintiff declared quare vi el armis, &c. and after verdict for the plaintiff, judgment was arrested; for quare is not positive but interrogatory, and much worse than quod cum. But if in trespass, the plaintiff declare with a quod cum, and afterwards charge another trespass with also de eo quod, &c. and have a verdict as to the last part, though it be for the defendant under the quod cum, judgment shall not be arrested; for the latter part is by way of a positive charge. 2 Stra. 681, Dobs v. Edmonds; 2 Lord Raym. 1413, S. C.; 2 Show. 27, Dunstall, qui tarn, &c. v. Dunstall. Debt on the statute of conventicles, for the penalty of twenty pounds. After judgment, error was brought, and it was objected that the declaration was by way of recital, with a quod cum; so that there was nothing laid positively, no direct averment that there was a conventicle held or kept. Judgment was reversed. Ibid. 295, Gourney v. Fletcher. In an action on the case, in Ireland, the plaintiff declared quod cum, the defendant took, and by force and arms detained certain goods, &c. per quod the plaintiff lost the sale. After j udgment for the plaintiff, a writ of error was brought in the Court of King’s Bench, in England; and it was held that the quod cum was naught, though in case: because the dint of the action was the taking and detainer, and the per quod was only damages; and so there was no direct affirmation. And the j udgment was reversed. Ibid. 447, Dennis v. Eshley. Replevin. Motion in arrest of judgment, for that there was no express averment of the taking, in the declaration, but only by a quod cum; though in case or debt it be well enough. Ordered to stay till moved on the other side. 1 Stra. 621. Amyon v. Shore. In assault, it was once well laid, and then went on with a cumque etiam, and laid another assault: there were entire damages; and it was moved in arrest of judgment, that the last assault was not positively laid, but only by way of recital. It was contended that the cumque should be construed as moreover: but per curiam, it has always been taken only as a recital in these declarations, and the judgment was arrested. See also 1 Tidd’s Practice, 390; 1 Wash. 135, Smith v. Walker, executor of Michel. Case, upon a contract of marriage; the plaintiff states that the defendant promised to give his grand-daughter as much as he should give to any of his own children, but does not aver how much he gave to either of his own children, as to what the plaintiff’s claim amounted. Held that there was no breach sufficiently assigned. 1 Call, 83, Chichester v. Vass; S. P. 2 Call, 39, Cooke v. Simms. In an action of assumpsit, on a note of hand, it was held that there must be an express assumpsit laid in the declaration; amere recital of the note in the declaration, not being sufficient. In the case of Holbrook v. Pratt, 1 Massachusetts Rep. 96, it was held that the quod cum in trespass was ill; but in Coffin v. Coffin, 2 Massachusetts Rep. 358, the Court from a review of all the cases, determined that it was not fatal, after verdict. In the latter case, however, some stress was laid on the particular words of the statute of jeofails of Massachusetts, which was considered as more extensive in-its operation than the English act of parliament; and also on the process and form of the judgment in the Courts of that State; the proceedings being nearly assimilated to the practice of the Common Pleas of England; and the judgment in trespass never being a capiatur. See the very able opinion of Ch. J. Parsons, in the above case. — Note in Original Edition.